**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:12CR186 |
| vs. | |
| JOSE LUIS FONSECA RAMIREZ, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (Filing No. 111) issued by Magistrate Judge Thomas D. Thalken recommending that the Motion to Suppress (Filing No. 73) filed by the Defendant Jose Luis Fonseca Ramirez ("Defendant") be denied.   Defendant filed an objection to the Findings and Recommendation (Filing No. 114) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).  For the reasons discussed below, the Findings and Recommendation will be adopted, and the Amended Motion to Suppress will be denied.

## PROCEDURAL BACKGROUND

Defendant was charged in a two count superseding indictment (Filing No. 89) with illegal reentry into the United States after being convicted of a felony in violation of 8 U.S.C. § 1326(a), and with conducting and attempting to conduct a financial transaction involving the proceeds of unlawful distribution of a controlled substance, knowing that the transaction was designed to conceal the nature of the proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Defendant seeks suppression of all evidence obtained as a result of a June 3, 2012, traffic stop.

Following an evidentiary hearing, Judge Thalken issued a Findings and Recommendation (Filing No. 111). Judge Thalken concluded that the pat-down of the Defendant, the officer's questions regarding the Defendant's itinerary, and the request for the Defendant to sit in the patrol cruiser suffered no constitutional infirmities. Judge Thalken also concluded that based on the totality of the circumstances, the Defendant consented to the search of his vehicle. Judge Thalken therefore recommended that the Motion to Suppress (Filing No. 73) be denied.

## FACTUAL BACKGROUND

Judge Thalken provided a detailed account of the events surrounding the traffic stop and search. The Court has considered the transcript of the hearing (Filing No. 99) and carefully reviewed the evidence. Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Thalken's factual findings in their entirety. The Defendant's objections to Judge Thalken's legal conclusions are discussed below.

## STANDARD OF REVIEW

"Under 28 U.S.C. § 636(b)(1)(C), when a magistrate judge issues proposed findings and recommendation on a motion to suppress evidence in a criminal case, the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions." *U.S. v. Schuck*, No. 8:12CR107, 2012 WL 5930195 at *3 (D. Neb. Nov. 26, 2012), NECrimR 59.2.

2

## DISCUSSION

**1.    Scope of the Traffic Stop**

Defendant argues that Omaha Police Department ("OPD") Officer Aaron Hanson ("Officer Hanson") impermissibly expanded the scope of the traffic stop.  Defendant does not argue that the initial traffic stop was unlawful or that it was improper for Officer Hanson to collect documentation, run background checks, or ask questions about his itinerary.  Instead, the Defendant contends that Officer Hanson impermissibly expanded the scope of the stop by placing the Defendant in his patrol cruiser after discovering the Defendant was carrying $2,000.00 on his person and was acting nervous. "After a law enforcement officer initiates a traffic stop, the officer 'may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013) (quoting *United States v. Barragan*, 379 F.3d 524, 528 (8th Cir. 2004)). These tasks can include computerized checks of the vehicle's registration, and the driver's criminal history and license, as well as the preparation of a warning or citation. *Id.*  "An officer also may request that the driver sit in the patrol car to answer questions and may ask questions about his itinerary."  *Id.* (citing *United States v. McCarty,* 612 F.3d 1020, 1024–25 (8th Cir. 2010)).

Defendant argues that it was unreasonable to request that he sit in the patrol car while Officer Hanson ran the routine traffic checks, and he should have been allowed to remain in his vehicle or on the public roadway.  There is no evidence that Officer Hanson's request was unreasonable under the circumstances, and it was proper for him to request that the Defendant sit in the patrol cruiser while performing background

3

checks. Eighth Circuit precedent permits an officer to make such a request. Accordingly, the Court concludes that under the totality of the circumstances, Officer Hanson did not impermissibly expand the scope of the traffic stop by requesting that the Defendant sit in the patrol cruiser.

## 2.   Defendant's Consent to Search

Defendant contains that he did not voluntarily consent to the search of his vehicle or to questioning after the purposes of the traffic stop were completed. Once a law enforcement officer issues a warning or citation, the traffic stop is over. *United States v. Garcia*, 613 F.3d 749, 753 (8th Cir. 2010) (citing *United States v. Peralez*, 526 F.3d 1115, 1120–21 (8th Cir. 2008)). However, "[i]f the encounter becomes consensual it is not a seizure, 'the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle.'" *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir.2010) (quoting *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir.2007)). Courts assess voluntariness by looking to the totality of the circumstances. *United States v. Capps*, 716 F.3d 494, 497 (8th Cir. 2013). Courts look to characteristics of the defendant, including "his age, general intelligence, level of intoxication, and likely awareness of his rights based on prior encounters with law enforcement." *Id.* Courts also look to the circumstances surrounding the request to search (such as whether law enforcement made the request in a public location, threatened the defendant, and *Mirandized* him prior to attempting to search the vehicle)." *Id.*

Defendant does not argue that any personal characteristic prevented voluntariness, and the Court concludes that the post-stop encounter was consensual.

4

The evidence shows that Defendant was an adult, understood the officers' questions, was familiar with the police investigation process, and was not under the influence of any drugs or alcohol at the time his consent was given.  Although he was seated in the police cruiser, he had only been detained while Officer Hanson completed tasks authorized by the initial stop.  Because the stop to that point was not unconstitutionally prolonged, and Defendant consented to the encounter, the Court need not determine whether Officer Hanson had reasonable suspicion to prolong the stop.  *See United States v. Santos–Garcia*, 313 F.3d 1073, 1078 (8th Cir.2002) (if encounter is consensual, then even without reasonable suspicion, officer may ask questions unrelated to stop and seek consent to search vehicle).

Defendant instead focuses on Officer Hanson's decision to remove the vehicle from the roadway to an impound lot.  Under certain circumstances, officers may reasonably conclude that consent to search a vehicle includes consent to remove the vehicle from the roadway.  *See United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007) (stating that defendant's consent included consent to move the truck to a safer area with less traffic where the request was not coercive, threatening, or made with improper promises); *United States v. Lopez-Vargas*, 457 F.3d 828, 831 (8th Cir. 2006) (concluding that an objectively reasonable officer could conclude that consent to search extended to moving the vehicle to a different locations such as police headquarters where tools were available to aid in the search).  In *Saenz*, the court concluded that law enforcement officers were justified where their request to move a vehicle to a safer area with less traffic was not coercive, nor did the officers use threats, offer improper promises, or indicate that the defendant could not refuse consent.  *Saenz*, 474 F.3d at

5

1137. During the search, the defendant did not complain or question officers. *Id.* Even though Miranda warnings were not given until after the search, the defendant's consent was not nullified. *Id.* Likewise, in *Lopez-Vargas*, the court concluded that the defendant's unconditional consent to search extended to opening a pinball machine at police headquarters. *Lopez-Vargas*, 457 F.3d at 830-31. Because the consent was not limited to searched occurring at the location of the stop, "an objectively reasonable officer could believe that [the defendant's] consent extended to opening the pinball machine after the car had been towed to the State Patrol headquarters." *Id.* at 831.

In this case, for the reasons stated above, the Court adopts Judge Thalken's finding that Defendant consented to the search of the vehicle. Like the consent given in *Saenz* and *Lopez-Vargas*, there is no evidence that Defendant's consent was limited to a search at the location of the initial traffic stop. There is no evidence that either OPD officer at the scene of the stop used threats, intimidation, or illicit promises to obtain Defendant's consent, and Defendant never objected or complained about the search or Officer Hanson's request to continue the search at an OPD facility. Defendant claims that the holding in *Lopez-Vargas* is distinguishable to this case because removal in that case was based on the availability of tools at police headquarters to open the pinball machine, and the fact that the defendants had already been arrested when the officer removed the vehicle. These arguments are inapposite because there is no indication in the *Lopez-Vargas* decision that the availability of tools or the timing of the arrest affected the scope of consent in any way. Rather than analyze the reasonableness of the request to move the vehicle, the court examined whether an objectively reasonable officer could believe that consent to search included moving the vehicle to police

headquarters.  *Id.* at 830-31.  The Court adopts Judge Thalken's finding, and concludes that a reasonable officer could conclude that Defendant's consent extended to moving the vehicle to another location.

**3.    Questioning and Removing Defendant from Scene of Traffic Stop**

Defendant claims that Judge Thalken erred in determining that only reasonable suspicion was required to detain the Defendant after the purpose of the initial stop had been completed.  "A law enforcement officer may detain a person for investigation without probable cause to arrest if the officer 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *United States v. Green*, 691 F.3d 960, 963 (8th Cir. 2012) (quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989)). Defendant claims it was error to look to whether Officer Hanson had reasonable suspicion to detain Defendant, and that the continued detention and transportation amounted to an arrest requiring probable cause.  A stop may become an arrest that requires probable cause if it lasts for an unreasonably long time. *United States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011).  However, obvious exigencies allow law enforcement officers to continue an investigative stop to stabilize a situation until they can determine whether full custodial arrest is warranted.  *United States v. Lego*, 855 F.2d 542, 545 (8th Cir.1988)).  Actions taken by law enforcement officers that "maintain the status quo" and "stabilize the situation . . . pending the quickest means of investigation reasonably available to confirm the officers' suspicions," do not transform an investigatory detention into an arrest as long as the actions of the officers are not dilatory or result in undue delay.  *United States v. Dickson*, 58 F.3d 1258, 1264 (8th Cir.1995)).

In this case, several indicators suggested that criminal activity was afoot.  These indicators include an odd travel itinerary, inconsistent statements given regarding the Defendant's itinerary, Defendant's inconsistent statements regarding the presence of large amounts of cash in the vehicle, a single ignition key without a key ring, the presence of religious items in the back of the vehicle, the lack of luggage, California license plates, multiple cell phones, a can of spray paint and two rubber banded bundles of cash, each containing $10,000.   In Officer Hanson's experience, each of these things were consistent with smuggling activity.  After officers discovered the cash during the consensual search, Officer Hanson returned to the police cruiser where Defendant was seated. Before Officer Hanson could say anything, Defendant voluntarily pronounced "they're going to kill me, 90 percent, I'm dead."  (Filing No. 99, TR 96.)  This statement was not made in response to any question.  In Officer Hanson's considerable experience, each of these indicators taken together suggested that Defendant was involved in illegal smuggling.  Additionally, based on Defendant's voluntary statement, he was concerned for the safety of the Defendant and the officers at the scene.

Viewed from the standpoint of an objectively reasonable police officer, Officer Hanson acted reasonably to preserve the status quo.   Under the totality of the circumstances, Officer Hanson had, at a minimum, reasonable suspicion to continue detention of the Defendant to investigate the large amounts of cash and inconsistencies in statements made to officers.  Before Officer Hanson could inquire, Defendant made a voluntary statement that created a concern for the Defendant's safety and the safety of the officers.   Officer Hanson acted reasonably, and within his duty to Defendant, in stabilizing the situation and removing Defendant to a secure location before suspicions

8

could be confirmed.  There is no evidence of threats or dilatory motives on the part of the officers, nor is there evidence of undue delay, and Defendant was advised of his rights shortly after arriving at the police facility.  Under the totality of the circumstances, the Court finds that the officers acted reasonably.

## CONCLUSION

For the reasons stated above, the officers acted reasonably in detaining the Defendant and seizing the vehicle.  The initial stop was justified and not unreasonably long, and all questioning during the stop was permissible.  After the conclusion of the stop, Defendant voluntarily consented to the search of his vehicle, and the officers acted reasonably under the circumstances in removing Defendant to a secure location.  Accordingly,

IT IS ORDERED:

1.      The Findings and Recommendation (Filing No. 111) issued by Magistrate Judge Thomas D. Thalken are adopted in their entirety;

2.      The Defendant's objection to the Findings and Recommendation (Filing Nos. 114) is overruled; and

3.      The Defendant's Amended Motion to Suppress (Filing No. 73) is denied.


Dated this 6th day of September, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge